UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.LIGHT DESIGN, INC., et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>BOXIN SOLAR CO., LTD., et al.,<br><br>    Defendants. | Case No. 13-cv-05988-EMC<br><br>**ORDER GRANTING PLAINTIFFS'<br>MOTION FOR DEFAULT JUDGMENT**<br><br>Docket No. 160 |

Plaintiffs d.light design, Inc. and d.light design, Ltd. (collectively, "d.light" or "Plaintiffs") have filed suit against the following companies: (1) Boxin Solar Co., Ltd. ("Boxin"); (2) Qingdao Sunflare New Energy Co. Ltd. ("Qingdao"); (3) Skone Lighting Co., Ltd. ("Skone Lighting"); (4) Beihai City YAST Electric Appliance Co. Ltd. ("Beihai Skone" and, collectively with Skone Lighting, "Skone"); (5) Cixi Day & Night Group Limited ("Day & Night"); (6) Dongguan Superb Solar Co. Ltd. ("Superb Solar"); (7) Shenzhen Power-Solution Ind. Co., Ltd. ("Power-Solution"); (8) Sailing Motor Co., Ltd. ("Sailing Motor"); and (9) Guangzhou LF Sky Energy Technology Co., Ltd. ("LF Sky") (all companies collectively, "Defendants").[1] After Defendants failed to respond to the complaint, the Clerk of the Court entered their defaults. *See* Docket Nos. 112, 119, 136, 149, 156. Plaintiffs then filed the currently pending motion for default judgment. Defendants failed to file a written opposition to the motion; furthermore, they failed to make an appearance at the hearing on Plaintiffs' motion, despite having been given notice of such. The Court therefore is presented with evidence and argument submitted by Plaintiffs alone.

---

[1] In their complaint, Plaintiffs also named another company, Guangdong Yinhe Group Co. Ltd. ("Yinhe Motor" and, collectively with Sailing Motor, "Yinhe-Sailing Motor"), as a defendant; however, Plaintiffs voluntarily dismissed Yinhe Motor from the lawsuit in November 2014. *See* Docket No. 117 (notice).

Having considered Plaintiffs' brief and accompanying submissions, as well as the oral argument of Plaintiffs' counsel, and all other evidence of record, the Court hereby **GRANTS** the motion for default judgment.

## I. FACTUAL & PROCEDURAL BACKGROUND

In its complaint, d.light alleges as follows. "d.light is a for-profit social enterprise that designs, manufactures and distributes solar light and power products." Compl. ¶ 21. Its current line of products includes the S2, S20, and S300 products, which are all solar light and power products with varying utilities and each of which have a distinctive trade dress. *See* Compl. ¶¶ 23, 40-48. d.light owns design patents for the S2, S20, and S300 products, namely the '571 patent, the '590 patent, the '430 patent, the '591 patent, the '417 patent, the '401 patent, the '243 patent, the '979 patent, and the '817 patent. *See* Compl. ¶ 26. d.light also owns a common law trademark in the "d.light" name used in connection with solar light and power products. *See* Compl. ¶ 49.

According to d.light, Defendants have all infringed its design patents, trade dress, and trademarks. For example, one of d.light's founders met with defendant Boxin in 2008 in Shenzhen, China to evaluate Boxin as a potential buyer of solar panels for d.light. After d.light decided not to work with Boxin, d.light discovered that Boxin had begun producing, offering to sell, and/or selling identical knock-offs of the product that d.light had showed to Boxin in the meeting. *See* Compl. ¶ 66. d.light subsequently learned that the remaining defendants have also been manufacturing, offering to sell, and/or selling solar light and power products identical to d.light's designs. *See* Compl. ¶ 67. Indeed, Superb Solar has claimed that it once was a manufacturer of genuine d.light products, and Sailing Motor has claimed that it is able to supply the same models as d.light. *See* Compl. ¶ 93. Moreover, two of the defendants – Qingdao and Power-Solution – have used d.light's trademarked name in connection with their marketing and sale of infringing products. *See* Compl. ¶¶ 73, 96. Defendants have largely offered for sale the infringing products through websites or "selling pages" on third-party business-to-business and business-to-consumer ecommerce platforms. *See* Compl. ¶¶ 76, 80.

Based on, *inter alia*, the above allegations, d.light brought suit against Defendants for design patent infringement pursuant to the Patent Act; trade dress infringement, false designation

of origin, and unfair competition pursuant to the Lanham Act; and unfair business practices pursuant to California Business and Professions Code § 17200. After d.light filed and served its complaint, Defendants failed to make any response. Accordingly, d.light moved for and was given entry of default. d.light then filed its motion for default judgment, which is the motion currently pending before the Court.

## II. DISCUSSION

A.  Personal Jurisdiction

As a preliminary matter, the Court addresses the issue of personal jurisdiction. Previously, the Court raised this issue – more specifically, at the time that Plaintiffs sought a temporary restraining order ("TRO"). *See* Docket No. 60 (order granting TRO). Recently, the Court asked d.light to provide supplemental briefing on the matter (*i.e.*, in conjunction with their motion for default judgment) because of a Supreme Court decision that issued after the Court granted Plaintiffs' request for a TRO. That decision is *Walden v. Fiore*, 134 S. Ct. 1115 (2014). In *Walden*, the Supreme Court emphasized that "our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," and underscored that "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 1122. "The proper question," the Supreme Court held, "is not where the plaintiff experienced a particular injury or the effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 1125.

Having considered the matter, the Court concludes that *Walden* does not preclude the exercise of personal jurisdiction over Defendants in the instant case. Unlike Defendants here, the defendant in *Walden* "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to [the forum state]." *Id.* at 1124. In contrast, Defendants here conducted business online with California residents and shipped products into California. Moreover, the *Walden* Court specifically left open the "very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State" because *Walden* dealt with the seizure of physical assets. *Id.* at 1125 n. 9. Courts that have interpreted *Walden* in the context of virtual contacts have generally found personal jurisdiction over defendants who

3

1  conduct interactive online activities with forum residents or direct business to the forum state.
2  *See, e.g.*, *In re Capacitors Antitrust Litig.*, No. 14-CV-03264-JD, 2015 WL 3638551, at *3 (N.D.
3  Cal. June 11, 2015) (finding personal jurisdiction where defendant shipped products into the
4  forum); *LiveCareer Ltd. v. Su Jia Technologies Ltd.*, No. 14-CV-03336-JST, 2015 WL 1448505,
5  at *4 (N.D. Cal. Mar. 31, 2015) (finding personal jurisdiction where defendant maintained an
6  interactive commercial website used by forum state residents that also contained specific
7  instructions for forum state users). While the Court does not have any evidence regarding the
8  volume of sales Defendants have had with California, which would likely affect the personal
9  jurisdiction calculus, d.light cannot be blamed for that fact because, if Defendants had participated
10 in this litigation, then d.light would be able to obtain discovery on that specific issue. Finally, the
11 Court notes that it specifically called out the issue of personal jurisdiction for Defendants, and
12 even explicitly stated that Defendants are not foreclosed from challenging personal jurisdiction,
13 *see* Docket No. 60 (Order at 1 n.1) (stating that "[t]he Court's ruling here [granting the TRO] does
14 not bar Defendants from contesting personal jurisdiction, *e.g.*, in opposition to Plaintiffs' motion
15 for a preliminary injunction"), but Defendants have made no effort to contest jurisdiction (let
16 alone appear in the lawsuit). Accordingly, the Court concludes that there is no personal
17 jurisdiction bar to a judgment against Defendants.

18 B.     Service of Process

19     The Court now turns to service of process. In deciding whether to grant or deny default
20 judgment, the Court must first "assess the adequacy of the service of process on the party against
21 whom default is requested" because, if service were improper, that may well explain the failure of
22 a defendant to appear in a lawsuit. *Sanrio Co. v. J.I.K. Accessories*, Case No. C-09-0440 EMC,
23 2012 WL 1366611, at *2 (N.D. Cal. Apr. 19, 2012).

24     In the case at bar, all Defendants are corporations incorporated under the laws of China
25 with principal places of business in China. China is a party to the Hague Convention on the
26 Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters. d.light
27 attempted to serve all Defendants to this case via the procedures outlined in Article 5 of the
28 Convention, the preferred method of foreign service in China. d.light served all but five

4

1  Defendants through the procedures of Article 5.  *See* Docket No. 106 (service to Beihai Skone);
2  Docket No. 107 (service to Boxin); Docket No. 114 (service to Superb Solar); Docket No. 132
3  (service to Day & Night).  For the remaining five Defendants (namely, Qingdao, LF Sky, Skone
4  Lighting, Sailing Motor, and Power Solution), d.light was unable to serve through the Convention
5  procedures, and so asked the Court for permission to serve via email.[2]  *See* Docket Nos. 121, 143
6  (motions).  The Court ultimately granted the motions.  *See* Docket No. 124 (minutes); Docket No.
7  139, 147 (orders).

For the foregoing reasons, the Court concludes that there is no issue of improper service that would pose an obstacle to d.light's motion for default judgment.

C.   *Eitel* Factors

As to the merits of d.light's motion for default judgment, the Court considers the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986).  Because of the entry of default, the Court – in evaluating the above factors – takes as true all factual allegations in the complaint except those related to the amount of damages.  *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

The majority of the above factors weigh in favor of a default judgment.  For example, d.light would be prejudiced in the absence of a default judgment because it would be left without a remedy.  *See Century 21 Real Estate LLC v. RealtyComp.com*, No. C-14-4774 EMC, 2015 WL 1009660, at \*4 (N.D. Cal. Mar. 6, 2015).  This is especially problematic given that Defendants are selling inferior products, such that d.light's reputation and goodwill are being impacted.  Also, the

---

[2] Unless federal law provides otherwise, Federal Rule of Civil Procedure 4(f)(3) permits service on individuals in a foreign country "by other means not prohibited by international agreement, as the court orders."  F. R. Civ. P. 4(f)(3).  The Ninth Circuit has interpreted this rule to allow email service upon foreign defendants where the defendants were unreachable by other means or had no known physical address.  *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002).

1  relief sought by d.light is limited.  As discussed below, aside from attorney's fees and costs,
2  d.light is not asking for any monetary damages.  Finally, there is little possibility of a dispute in
3  light of Defendants' default, and Defendants' failure to appear cannot be attributed to excusable
4  neglect given the effort d.light has taken to keep Defendants apprised of the litigation (*e.g.*,
5  through mail, e-mail, and phone calls).

6  The only *Eitel* factors that are deserving of more analysis are the second and third, *i.e.*, the
7  merits of d.light's substantive claims and the sufficiency of those claims.  The Court has viewed
8  the evidence submitted by d.light which shows that the design of d.light's products and the design
9  of Defendants' products are practically identical.  Furthermore, nothing about d.light's design
10 suggests that the design was dictated by the function of the products.  Finally, "at least two
11 Defendants, namely, Power-Solution and Qingdao, have and are actually advertising their products
12 as 'd.light' products on their respective selling pages, including by using both the 'd.light' name
13 and d.light Products' model numbers."  Compl. ¶ 96.  Under these circumstances, d.light's claims
14 for design patent infringement; trade dress infringement, false designation of origin, and unfair
15 competition; and unfair business practices all have merit.

16 Accordingly, the Court finds that a default judgment against all Defendants, and in favor of
17 d.light, is proper.

18 D.    Relief Sought

19 The only remaining issue is what relief is appropriate in light of the liability determination.
20 Here, d.light asks for a permanent injunction, plus its attorney's fees and costs.  No damages are
21 sought.

22    1.    Permanent Injunction

23 Injunctive relief may be awarded for each of the claims asserted by d.light.  *See* 35 U.S.C.
24 § 283 (providing that "cases under this title may grant injunctions in accordance with the
25 principles of equity"); 15 U.S.C. § 1116 (providing that, for "civil actions arising under this Act,"
26 a court "shall have the power to grant injunctions, according to the principles of equity and upon
27 such terms as the court may deem reasonable"); Cal. Bus. & Prof. Code § 17203 (providing that
28 "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be

6

1  enjoined").

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.*, No. CV 14-2307 RSWL FFMX, 2014 WL 4679001, at *12 (C.D. Cal. Sept. 18, 2014).

Here, d.light has satisfied the four-factor test. For the first and second factors, the continued manufacture and sale of infringing products will likely result in harm to d.light that is irreparable and not compensable by money. For example, Defendants' conduct has already impacted d.light's reputation, business goodwill, and business relationships, especially as Defendants' infringing products are inferior. d.light may also suffer other harm that is not strictly monetary in nature such as price erosion. *See Abbott Labs. v. Andrx Pharms. Inc.*, 452 F.3d 1331, 1362 (Fed. Cir. 2006) (finding loss of goodwill or reputational harm constitutes irreparable harm); *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 976 (Fed. Cir. 1996) (deciding loss of market share and price erosion constituted irreparable harm).

As to the third factor, the balance of hardships weighs in favor of d.light. As shown above, d.light will be harmed by continued infringement of its design patents, trade dress, and trademarks. Defendants will not be burdened by the injunction because they do not have the right to infringe d.light's marks and are not licensed to manufacture or sell d.light's products. *See, e.g.*, Sanrio, 2012 WL 1366611, at *5 (finding no hardship when a permanent injunction would merely require the defendant to comply with the law).

Finally, the public interest will be served by served by protecting d.light's intellectual property rights. Granting a permanent injunction will reduce customer confusion and prevent customers from purchasing Defendants' infringing products under the mistaken belief that they are

purchasing genuine d.light products.

As to the terms of the permanent injunction, the Court shall simply convert the now-existing preliminary injunction into a permanent one. d.light has stated to the Court that it has no objection to this proposal. *See* Docket No. 169 (Supp. Br. at 8) ("Plaintiffs are amenable to the issuance of a permanent injunction containing the language already adopted by this Court for purpose of the Preliminary Injunction presently in place.").

Accordingly, the terms of the permanent injunction are as follows:

> **Defendants (including their officers, agents, service, employees, attorneys, and others in active concert or participation with them) are hereby enjoined from selling, offering for sale, or causing the sale, in the United States, of products that (1) infringe d.light's design patents (the '571, '590, '430, '591, '417, '401, '243, '979, and '817 patents) and/or that (2) infringe d.light's trade dress (specifically, with respect to d.light's S2, S20, and S300 products) or trademark (with respect to the "d.light" name).**

2.  Attorney's Fees and Costs

Attorney's fees and costs may be awarded under the Patent and Lanham Acts. More specifically, both Acts allow for such an award in "exceptional cases." 35 U.S.C. § 285 (providing that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party")[3]; 15 U.S.C. § 1117(a) (providing the same). With respect to the Lanham Act, the Ninth Circuit has interpreted "exceptional" to mean when "'the infringement is malicious, fraudulent, deliberate, or willful.' Egregious conduct is not required. Nor is bad faith." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1078 (9th Cir. 2015).

The Court finds that Defendants' blatant copying of d.light's products and use of d.light's trademarked name makes this case an "exceptional" one for purposes of fees and costs. Moreover, having reviewed the billing records submitted by d.light, the Court finds the requested $73,371.25 in attorney's fees reasonable. However, it would not be equitable to hold Defendants jointly and

---

[3] "[C]ourts have continued to recognize that non-expert, non-taxable costs are compensable under section 285." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. SACV 12-00329 AG( JPRx), 2015 U.S. Dist. LEXIS 122879, at *19 (C.D. Cal. Sept. 4, 2015).

severally liable for *all* attorney's fees because not all Defendants caused Plaintiffs to incur fees equally.  Based on the Court's review, the Court shall allocate attorney's fees as follows: (1) all Defendants shall be jointly and severally liable for $63,171.25 (representing fees related to general research, the complaint, and motions affecting all Defendants); (2) Boxin and Beihai Skone shall, in addition, be jointly and severally liable for $5,992.50 (representing fees related to additional motions for entry of default for those specific Defendants); and (3) Day & Night, Skone Lighting, and Sailing Motor shall, in addition, be jointly and severally liable for $4,207.50 (representing additional motions to deem service effectuated for those specific Defendants).

As for costs, d.light initially asked for an award of $5,000, but, as the hearing, d.light admitted that this amount represented the amount d.light paid for the bond, which the Court required in issuing the TRO.  *See* Docket No. 60 (Order at 4).  Because d.light should be able to get this money returned, the Court denied (without prejudice) this request for costs.  The Court, however, allowed d.light to submit additional information as to any nontaxable costs.  d.light did not submit a supplemental brief on nontaxable costs, simply filing instead a bill of costs.  See Docket No. 172 (bill of costs).  Because a bill of costs is to be decided in the first instance by the Clerk of the Court, *see* Fed. R. Civ. P. 54(d)(1) (providing that "[t]he clerk may tax costs on 14 days' notice"), the Court shall not award any costs at this juncture.

### III. CONCLUSION

For the foregoing reasons, the Court grants d.light's motion for default judgment.  The Court also grants a permanent injunction as follows:

> **Defendants (including their officers, agents, service, employees, attorneys, and others in active concert or participation with them) are hereby enjoined from selling, offering for sale, or causing the sale, in the United States, of products that (1) infringe d.light's design patents (the '571, '590, '430, '591, '417, '401, '243, '979, and '817 patents) and/or that (2) infringe d.light's trade dress (specifically, with respect to d.light's S2, S20, and S300 products) or trademark (with respect to the "d.light" name).**

Finally, the Court awards d.light attorney's fees as follows: (1) all Defendants shall be jointly and severally liable for $63,171.25 (representing fees related to general research, the

9

complaint, and motions affecting all Defendants); (2) Boxin and Beihai Skone shall, in addition, be jointly and severally liable for $5,992.50 (representing fees related to additional motions for entry of default for those specific Defendants); and (3) Day & Night, Skone Lighting, and Sailing Motor shall, in addition, be jointly and severally liable for $4,207.50 (representing additional motions to deem service effectuated for those specific Defendants).

This order disposes of Docket No. 160.

**IT IS SO ORDERED**.

Dated: December 1, 2015

_____
EDWARD M. CHEN
United States District Judge